| | |
|---|---|
| MARY AMANDA ROGERS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   <u>**MEMORANDUM AND**</u> |
| **v.** | )   <u>**RECOMMENDATION**</u> |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment"  (Document No. 21) and Defendant's "Motion For Summary Judgment" (Document No. 25).  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B).  After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment"  be <u>denied</u>;  that Defendant's "Motion For Summary Judgment"  be <u>granted</u>;  and that the Commissioner's decision be <u>affirmed</u>.

## I.     BACKGROUND

Plaintiff Mary Amanda Rogers ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.  (Document No. 1). On or about March 16, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*,

---

[1]  Carolyn W. Colvin is the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

alleging an inability to work due to a disabling condition beginning September 10, 2001. (Transcript of the Record of Proceedings ("Tr.") 42, 90-92). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on July 15, 2004, and again after reconsideration on September 16, 2004. (Tr. 37-38, 50-53, 59-60). In its "Notice of Reconsideration" the Social Security Administration ("SSA") included the following explanation of its decision:

> On your application you stated that you are disabled because of chronic fatigue syndrome and depression. The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 59).

On May 23, 2006, a hearing was held before Administrative Law Judge Maurice Horne ("Horne"), who issued an unfavorable decision on September 1, 2006. (Tr. 42-49). Plaintiff filed a request for review of Horne's decision on May 8, 2007, and on December 4, 2008, the Appeals Council remanded the case for further proceedings. (Tr. 80-87).

On remand, Plaintiff's claim was consolidated with a subsequent May 2007 application for disability insurance benefits. (Tr. 88, 105-107). On September 10, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Joseph Brezina ("ALJ"). (Tr. 21, 745-784). In addition, Maria Vargas, a vocational expert ("VE"), and Margaret DeVries, Plaintiff's attorney, appeared at the hearing. (Tr. 21, 747).

The ALJ issued an unfavorable decision on December 17, 2009, denying Plaintiff's claim. (Tr. 21-32). Plaintiff filed a request for review of the ALJ's decision on January 21, 2010, which was denied by the Appeals Council on November 10, 2011. (Tr. 10-12, 17). The December 17, 2009 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 10).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on January 17, 2012. (Document No. 1). Also on January 17, 2012, the undersigned was assigned to this case as the referral magistrate judge. "Plaintiff's Motion For Summary Judgment" (Document No. 21) and Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment" (Document No. 22), were filed January 14, 2013; and Defendant's "Motion For Summary Judgment" (Document No. 25) and "Defendant's Memorandum Of Law In Support Of Motion For Summary Judgment" (Document No. 26), were filed April 11, 2013.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v.

Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 10, 2001, and the Plaintiff's date last insured .[2] (Tr. 21). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

disability at any time from September 10, 2001 through December 31, 2007, the date last insured. (Tr. 32).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 31-32).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since September 10, 2001, her alleged disability onset date. (Tr. 23). At the second step, the ALJ found that chronic fatigue syndrome, depression, anxiety, and post traumatic stress disorder were severe impairments. Id.[3] At the third step, the ALJ determined

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 24).

Next, the ALJ assessed Plaintiff's RFC and found that through the date last insured, she retained the capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c), with the following limitations:

> Simple, unskilled work activity which only required 1, 2, or 3-step instructions; work that was not in close proximity to co-workers (meaning that the individual could not function as a member of a team); and, work that was not in direct contact with the public; she could have lifted/carried 25 pounds frequently, and up to 50 pounds occasionally (from very little, up to 1/3 of an 8-hour workday); she could have stood and/or walked (with normal breaks) for a total of 6 hours in an 8-hour workday; she could have sat (with normal breaks) for a total of 6 hours in an 8-hour workday; she could have performed pushing and pulling motions with her upper extremities within the aforementioned weight restrictions; she could have performed activities requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling; and she could have performed each of the following postural activities without restriction: climbing (ramps/stairs), balancing, stooping, kneeling, crouching, or crawling.

(Tr. 25-26). In making his finding, the ALJ specifically stated that he "had considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CRF 404.1529 and SSRs 96-4p and 96-7p." (Tr. 26). The ALJ further opined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 27).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as an X-ray technician because she was "restricted to performing only unskilled work activity due to her mental limitations." (Tr. 30). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 32). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included: hand packer (medium in exertion and unskilled); laundry worker (light in exertion and unskilled); laundry folder (light in exertion and unskilled); bench hand (sedentary in exertion and unskilled); and check weigher (sedentary in exertion and unskilled). (Tr. 31). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 21, 2001, and December 31, 2007. (Tr. 32).

Plaintiff on appeal to this Court assigns error to the ALJ's assessment of: (1) Chronic Fatigue Syndrome; (2) credibility; (3) the consulting state agency physicians' RFC assessments; and (4) other "numerous errors" in assessing Plaintiff's RFC. (Document No. 22). The undersigned will discuss each of these contentions in turn.

## A. Chronic Fatigue Syndrome

In her first assignment of error, Plaintiff argues that the ALJ "committed errors of law in his analysis of the claimant's Chronic Fatigue Syndrome." (Document No. 22, p.9). Plaintiff quotes Social Security Ruling ("SSR") 99-2p for support, as did the ALJ's decision. Compare (Document No. 22, p.9) and (Tr. 24). "This Ruling explains that CFS, when accompanied by appropriate medical signs or laboratory findings, is a medically determinable impairment that *can be* the basis for a finding of 'disability.'" SSR 92-p, 1999 WL 271569 at *1 (S.S.A. April

30, 1999) (emphasis added).   As noted above, the ALJ in this case found Plaintiff's Chronic

Fatigue Syndrome ("CFS") to be a severe impairment, but did not find that Plaintiff's CFS alone,

or in combination with other impairments, equaled one of the listed impairments.  (Tr. 24).

Plaintiff asserts that the ALJ committed an error of law when he failed to analyze key

evidence of Plaintiff's limitations from CFS, including the results of a Cardiopulmonary

Exercise Test on July 5, 2007.  (Document No. 22, p.9).  Plaintiff contends that the results of

Plaintiff's test were abnormal and that the ALJ "failed to discuss or even acknowledge the

abnormal and significant findings from Ms. Rogers's Cardiopulmonary Exercise Test in his

opinion."  (Document No. 22, p.10).  In addition, Plaintiff argues that the ALJ impermissibly

"played doctor" by "relying on his own assessment of irrelevant physical findings."  (Document

No. 22, pp.11-12).  Plaintiff concludes that the decision of the Commissioner should, therefore,

be reversed and benefits be awarded to Plaintiff.  (Document No. 22, pp.10, 12).

Defendant contends that the ALJ adequately assessed Plaintiff's CFS.  (Document No.

26, p.6).

> In the context of assessing Plaintiff's RFC, the ALJ noted that
> Plaintiff was "initially assessed with CFS by a neurologist, Dr.
> Boyles in July 2002," but that Dr. Girmay diagnosed CFS after
> conducting a physical examination that "did not reveal any
> significant limitations whatsoever." (Tr. 28, 240, 258)  The ALJ
> further noted that Dr. Black's diagnosis of CFS followed an almost
> entirely unremarkable physical examination.  (Tr. 28, 572-73)  As
> noted above, SSR 99-2p emphasizes that the Commissioner's
> regulations require that a disabling impairment "result from
> anatomical, physiological, or psychological abnormalities which
> can be shown by medically acceptable clinical and laboratory
> diagnostic techniques." 20 C.F.R. § 404.1508.  While SSR 99-2p
> provides a non-exclusive list of possible findings acceptable to
> establish the presence of CFS for Social Security disability
> purposes, 1996 WL 271569, at *3-*4, neither Dr. Boyles' nor Dr.
> Girmay's CFS diagnoses identify any supportive findings at all.
> Dr. Boyles appears to have accepted Plaintiff's report that another
> physician "thought she had chronic fatigue syndrome" (Tr. 244),

while Dr. Girmay seems to have accepted Plaintiff's subjective report of the disorder despite finding no abnormal clinical findings. (Tr. 257-58)

. . .

On June 20, 2007, after conducting an initial examination, Dr. Black stated that Plaintiff "clearly meets 1994 CDC and international criteria for CFS." (Tr. 573) However, Dr. Black did not indicate that either her examination of Plaintiff or any laboratory or other medical evidence before her grounded that diagnosis. Significantly, neither Dr. Black's initial examination records nor her subsequent treatment notes contain or reference any of the acceptable diagnostic criteria provided by SSR 99-2p or any other objective medical evidence of similar import. Thus, Dr. Black appears to have based her diagnosis on the "individual's reported symptoms alone" – a diagnostic practice which was likely acceptable for treatment purposes under the criteria set out in the CDC's definition of the condition, but inadequate for Social Security disability purposes. In the absence of the objective medical evidence required to establish an impairment, the ALJ's assessment of a Step 2 severe impairment of "subjective complaints of chronic fatigue syndrome" (Tr. 23 at Finding 3) was proper under the Commissioner's regulations.

(Document No. 26, pp.6-7).

Contrary to Plaintiff's suggestion that the ALJ failed to credit or even acknowledge evidence of Plaintiff's CFS, the ALJ's decision, as discussed above, indicates that the ALJ reviewed and acknowledged substantial evidence addressing Plaintiff's CFS. See (Document No. 22, p.11). Based on that review, the ALJ found that Plaintiff's CFS was a severe impairment, but not disabling. It appears that Plaintiff is now asking the Court to re-weigh the "objective evidence" and award benefits to Plaintiff. (Document No. 22, p.12). As noted in the Standard Of Review, the "Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence." Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012).

Furthermore, the undersigned is not persuaded by Plaintiff's contention that the ALJ should be reversed based on his failure to acknowledge and adopt Dr. Lapp's purported findings related to the Cardiopulmonary Exercise Test. Defendant effectively argues that Dr. Lapp's interpretation of those test results "was based on a medical reference work that was fourteen years and two editions out of date, and recognized by its publisher as including 'an antiquated model' of assessing disability." (Document No. 26, p.9). Plaintiff notes that "Dr. Lapp did not diagnose Plaintiff with CFS, or issue any diagnosis at all, based on the results of the exercise stress test." (Document No. 26, p.10) (citing Tr. 700).

Defendant goes on to persuasively argue as follows:

> the ALJ in reaching his findings as to Plaintiff's physical and mental RFC relied on the opinions of no fewer than four non-examining State agency medical consultants: two doctors, a psychologist, and a psychiatrist. (Tr. 29-30) These medical consultants had Plaintiff's entire record through the date of their review before them, and took her CFS diagnosis in the context of the record as a whole in reaching opinions as to Plaintiff's remaining work capacities. (Tr. 465, 629, 647) Notably, one of the State agency reviewing physicians upon whose opinion the ALJ relied, Dr. Sankar Kumar, expressly considered Dr. Lapp's stress test report in making findings as to Plaintiff's physical RFC. (Tr. 647)

> These State Agency medical consultants were "highly qualified physicians [and] psychologists … who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(E)(2)(i). Particularly in the absence of any opinions from Plaintiff's treating or examining physicians, the State agency consultants' opinions provided the necessary medical foundation for the ALJ's RFC assessment. *See Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (ALJ may rely on opinion of medical expert who has thoroughly reviewed the record when the opinion is consistent with objective medical evidence in the record), *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (nonexamining physician's testimony reliable when consistent with the record).

(Document No. 26, pp.10-11).

Based on the foregoing, the undersigned will decline to recommend that the ALJ's analysis of Plaintiff's CFS requires reversal or remand.

**B.      Credibility**

Next, Plaintiff challenges the ALJ's evaluation of Plaintiff's credibility.  (Document No. 22, pp. 12-18).  Plaintiff specifically contends that the ALJ failed to explain and/or provide evidentiary support for his credibility evaluation.  (Document No. 22, pp.12-13) (citing SSR 96-7p).  Plaintiff argues that the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" is "meaningless boilerplate."  Id. (citing Tr. 27).

Although Plaintiff suggests that the ALJ failed to comply with his duties in assessing Plaintiff's credibility by relying on "meaningless boilerplate," she concedes that his decision includes another paragraph discussing credibility.  (Document No. 22, pp.13-14);  (Tr. 29).  Plaintiff does not appear to acknowledge that the ALJ's decision also stated that he did not find Plaintiff "entirely credible" at the hearing, and that "[h]aving considered the evidence of record as well as the testimony presented at the hearing, the undersigned finds that the claimant's allegations of such severe pain and other symptoms are not fully credible and are not supported by the evidence as a whole."  (Tr. 29-30).

Defendant argues that the ALJ's credibility findings should be upheld.  (Document No. 26, pp.11-14).  Defendant notes that this Court has found that the "'meaningless boilerplate' argument is unpersuasive where an ALJ considers the credibility of a claimant's complaints along with the rest of the record, including the medical evidence, the claimant's activities of

daily living, and her responsiveness to treatment." (Document No. 26, p.13) (citing <u>McDowell v. Astrue</u>, No. 3:11CV652-RJC-DSC, 2012 WL 4499336, at *7 (W.D.N.C. Aug. 2, 2012) <u>adopted by</u> 2012 WL 4499283 (W.D.N.C. Sept. 28, 2012)). Defendant effectively describes the ALJ's analysis as follows:

> the ALJ discussed the record evidence that supported his credibility findings at length. First, the ALJ highlighted the absence of medical findings commensurate with Plaintiff's complaints of debilitating CFS. (Tr. 27) Next, the ALJ outlined the medical evidence of Plaintiff's mental impairments of depression and anxiety, summarizing her treating psychiatrist's records that noted improvement with prescribed medications, as well as a generally unremarkable consultative evaluation by State agency consultant examining psychiatrist Dr. Anthony Carraway. (Tr. 27-28, 404-408, 411, 413-16, 419-20, 426-27, 432, 434, 436, 493, 503, 574, 576, 578, 582, 611-614) He went on to identify physical and mental examinations that generally resulted in findings inconsistent with Plaintiff's complaints of disabling symptoms and limitations. (Tr. 28-29, 250-54, 256-58, 571-73, 611-14) Finally, the ALJ considered Plaintiff's own reported activity level, which he found did not reflect her claimed level of incapacity. (Tr. 29)

(Document No. 26, p.13).

Defendant further notes that:

> Here, in addition to the other evidence outlined above, the ALJ considered Plaintiff's reports to several consultative examiners that she lived alone, could do some cooking and housework such as vacuuming and dishes, visited relatives and attended church regularly, watched television and listened to the radio, engaged in her hobby of gardening, went to the methadone clinic every two weeks, and spent time with her mother. (Tr. 29, 252, 256, 612). Importantly, the ALJ did not equate these activities with the ability to perform full-time work; rather, he reasonably found that this level of daily activity was inconsistent with the extreme level of physical and mental limitations Plaintiff reported.

(Document No. 26, pp.13-14).

After careful consideration of the parties' arguments and the record, the undersigned is satisfied that the ALJ relied on substantial evidence in reaching his determination that Plaintiff was only partially credible.

### C.    State Agency Physicians' Assessments

Plaintiff also asserts that the ALJ erred in his treatment of three State agency physicians' RFC assessments.    (Document No. 22, pp.18-19).    First, Plaintiff contends that the ALJ "incorrectly said that Dr. Tomlinson and Dr. Kumar found that Ms. Rogers has the residual functional capacity to perform a full range of medium work."  (Document No. 22, p.18) (citing Tr. 30).  Second, Plaintiff notes that the ALJ failed to address Dr. Shah's assessment at all.  Id. Plaintiff concludes that the ALJ's failure to reconcile the contradictions between the State agency physicians, and to consider Dr. Shah's findings coupled with the VE's testimony, is reversible error.  (Document No. 22, p.19).

Defendant first notes that "none of Plaintiff's treating or examining medical sources provided an opinion as to [Plaintiff's] physical RFC," thus the ALJ properly relied on the "three non-examining State agency reviewing physicians." (Document No. 26, p.15).    Defendant acknowledges that "Dr. Kumar's opinion deviated from Dr. Tomlinson's in one significant aspect;    namely, Dr. Tomlinson assessed Plaintiff with the ability to perform exertionally medium work (Tr. 466), while Dr. Kumar assessed a light work capacity."  Id.

Defendant, however, argues that this inconsistency does not undermine substantial evidence supporting the ALJ's determination that Plaintiff was not disabled.  Id.  Defendant correctly notes that only one of the jobs the VE identified required performance at the medium exertional level.  Id.  (citing Tr. 780).  The ALJ, with help from the VE, actually identifies five (5) jobs Plaintiff could perform, two of which were light in exertion, and two of which were

sedentary in exertion. (Tr. 31). As such, Defendant contends that any error does not warrant remand "since 'there is no question but that he would have reached the same result' of finding Plaintiff not disabled at Step 5 regardless of whether Dr. Tomlinson's or Dr. Kumar's opinion grounded his RFC findings." (Document No. 26, p.16) (citing Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) and Ward v. Astrue, 2010 WL 1752554, at *4 (W.D.Va. May 3, 2010) ("The erroneous hypothetical did not change the outcome of the decision as the VE identified two occupations that fit within the parameters of the limitation that was omitted.")).

Defendant further contends that although the ALJ did not expressly consider Dr. Shah's opinion in his decision, that opinion was almost identical to Dr. Kumar's. (Document No. 26, p.16). Defendant argues that the additional limitation on exposure to machinery suggested by Dr. Shah is not supported by the evidence and, in short, the ALJ's acceptance of two out three non-examining physicians' opinions is reasonable and supported by substantial evidence.

The undersigned finds that this issue presents a close call, but ultimately the ALJ's finding at Step 5 is supported by substantial evidence.

### D.     ALJ's Mental RFC Findings

Plaintiff also argues that the ALJ made "numerous errors" in assessing Plaintiff's mental residual functional capacity. (Document No. 22, pp.19-24). Specifically, Plaintiff contends that the ALJ: (1) failed to account for his Paragraph B findings; (2) failed to make the more detailed findings required beyond the Paragraph B criteria; and (3) made inconsistent findings and failed to resolve contradictions in the record. Id.

After careful review of the ALJ's decision, as well as the parties' briefs, the undersigned is not persuaded that Plaintiff has identified any error requiring remand or reversal here either.

14

The undersigned finds Defendant's analysis, as largely adopted below, more than adequately supports the ALJ's decision. (Document No. 26, pp.18-25).

It appears that the ALJ's hypothetical question reflected his RFC finding, which accommodated the mental functional limitations he found to be fully credible and supported by the medical evidence. (Tr. 25-26, 778). His corresponding hypothetical therefore adequately reflected Plaintiff's mental functional capabilities and limitations. Because the ALJ's hypothetical question accurately identified those mental limitations that were credibly supported by the record, the VE's response to that question was substantial evidence in support of the ALJ's Step 5 finding.

The Commissioner further notes that Plaintiff's argument is misplaced, because the ALJ's Step Three findings of limitations in the four broad mental functional areas, including concentration, persistence, or pace, only implicate the severity of Plaintiff's mental impairments and/or equivalence to a Listing-level, *per se* disabling impairment, not the extent of any specific functional work-related mental limitations. (Document No. 26, p.18) (citing SSR 96-8p, 1996 WL 374184, at *4 ("The limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Neither the Act nor the Commissioner's regulations require an ALJ to incorporate the degree of limitation he assesses in the broad mental functional areas, 20 C.F.R. § 404.1520a(c)(3), into his RFC findings or his corresponding hypothetical to the VE at Step 5.

Even assuming, however, that the ALJ was obligated to translate his Step 3 findings into specific RFC limitations, he did so in this case through his primary reliance on the opinions of two State agency consultant reviewers, psychologist Clifford Charles, Ph.D., and psychiatrist

Alex Guerrero, M.D. The ALJ based his Step 3 assessment of a moderate limitation in concentration, persistence or pace on Dr. Charles' and Dr. Guerrero's corresponding findings, set out in their Psychiatric Review Technique forms ("PRTF"). (Tr. 30, 457, 627). Both Dr. Charles and Dr. Guerrero went on to complete Mental Residual Functional Capacity Assessment forms ("MRFC"), which found Plaintiff capable of adequate concentration, persistence, or pace to perform work involving short, simple instructions and chores. (Tr. 463, 629). The ALJ based his mental RFC findings, as he did his Step 3 findings, on Dr. Charles' and Dr. Guerrero's assessments. (Tr. 30).

Much like the Step 3 findings from these experts' PRTF forms, their Summary Conclusions do not state their opinions of Plaintiff's mental RFC. Defendant contends that there was no need for the ALJ to include the consultant experts' Summary Conclusions in his mental RFC findings, because they were already part of the experts' Functional Capacity Assessments on which he relied. (Document No. 26, p.22) (citing Tr. 463, 629, 633).

Finally, Defendant effectively explains that the ALJ did not err in his consideration of the weight given to mental consultative examiners. (Document No. 26, pp.22-25).

In the context of assessing the credibility of Plaintiff's subjective symptomatic complaints, the ALJ had already summarized several treatment notes during the three-year period between Dr. Ahsanudin's and Dr. Carraway's evaluations that documented this improvement. (Tr. 27-28) The increase in Plaintiff's GAF scores from a low of 42 in 2004 to a high of 62 in 2007 tends to reinforce the ALJ's interpretation of Plaintiffs' medical records as documenting improvement over time. (Tr. 29). The ALJ's thorough discussion of both the two consultants' estimations of Plaintiff's GAF and the medical records consistently documenting improved symptoms was adequate to indicate substantial evidentiary support in the record. Id.

Dr. Carraway found little in the way of mental functional limitations that would detract from Plaintiff's ability to perform basic work-related mental activities:

> She had no impairment of short-term memory and no impairment of immediate memory. Attention and concentration were intact. Her ability to understand, retain, and perform instructions is minimally to mildly impaired.

(Tr. 614). The portion of Dr. Carraway's statement on which Plaintiff relies did not suggest any specific limitations resulting from the mental impairments that were within his area of expertise. Rather, it reflected his opinion that Plaintiff's primary limitations were physical rather than mental, and that his specialization in psychiatric medicine undermined his ability to suggest a specific degree of limitation resulting from her physical impairments and resulting subjective limitations, such as pain and fatigue. (Tr. 614).

Plaintiff bears the burden of establishing her RFC. Plummer v. Astrue, 5:11CV006-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC.") In this case, Plaintiff failed to carry her burden to establish that her capacity for work-related mental activities was inconsistent with the ability to perform work existing in significant numbers in the national economy.

## IV.   CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

# V.    RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 21) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 25) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

# VI.    TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: November 25, 2013

David C. Keesler
United States Magistrate Judge

18