IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:12CV3-RLV

| | |
|---|---|
| MARY AMANDA ROGERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | **Memorandum and Order** |

**THIS MATTER** is before the Court on the parties' cross-motions for summary judgment. (Docs. 21, 22, 25, 26).

Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge David C. Keesler was designated to consider and recommend disposition of the aforesaid motions. Accordingly, in a Memorandum and Recommendation (M & R) filed on November 25, 2013, the Magistrate Judge recommended that the Court deny Plaintiff's motion, grant Defendant's motion, and affirm the Commissioner's decision denying benefits. (Doc. 27). Plaintiff timely filed an Objection to the Memorandum and Recommendation on December 12, 2013. (Doc. 28).

For the reasons set forth herein, remand is required.

### I. Standard of Review

In reviewing a denial of benefits under the Social Security Act, the Court may not conduct a *de novo* review of the decision of the Administrative Law Judge (ALJ) but rather must examine the record to determine whether the Commissioner's findings of fact are supported by substantial evidence and the decision is in accordance with the law. 42 U.S.C. § 405(g); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). The district court reviews *de novo* only those

portions of the M & R to which specific objections have been raised. 28 U.S.C. § 636(b)(1). *De novo* review is not required when an objecting party raises only general or conclusory objections, or when the objection is essentially identical to an argument raised in a motion for summary judgment without further reference to the M & R. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *Eaker v. Apfell*, 152 F. Supp. 2d 863, 864 (W.D.N.C. 1998). Accordingly, the Court conducts a careful review of the entire M & R, as well as a *de novo* review of those issues specifically raised in objection to the M & R.

## II. Objections to the M & R

Plaintiff specifically objects to the M & R by arguing that the Magistrate Judge erred: 1) in his finding that the ALJ's failure expressly to discuss the results of claimant's Cardiopulmonary Exercise Test (exercise stress test) performed on July 5, 2007 by Charles W. Lapp, M.D. ("Dr. Lapp") did not require remand; and 2) in accepting the Commissioner's explanation, and *post-hoc* rationale of the ALJ's evaluation of the record evidence concerning the same Chronic Fatigue Syndrome issue, contrary to the *Chenery* Doctrine.[1]

## III. Background

The Social Security Administration ("SSA") has established a five-step evaluation process, which proceeds sequentially, for determining whether an individual is disabled[2]. 20

---

[1] *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

[2] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if claimant can adjust to perform other work, the SSA will find that claimant is not disabled at

C.F.R. §§ 404.1520(a) and 416.920(a). If it is determined that a claimant is or is not disabled at one step, the SSA or Administrative Law Judge ("ALJ") will issue a decision without proceeding to the next step in the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three has been completed, but before step four is begun, in order to determine what level of physical and mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

At the first step of the sequential evaluation process, the presiding Administrative Law Judge Joseph E. Brezina determined that Plaintiff met the disability insured status requirements as she had not engaged in substantial gainful activity since the alleged onset date of September 10, 2001.[3] (Findings 1, 2; Tr. 23).

At the second step, the ALJ determined that Plaintiff suffered from several severe impairments— "*subjective* complaints of chronic fatigue syndrome ["CFS"]; depression; anxiety; and post traumatic stress disorder" —but that none of these impairments, or combination of impairments, met or medically equaled a disability listing. (Findings 3, 4; Tr. 23−24) (emphasis added).

---

the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

[3] The relevant time period is September 10, 2001 through the date last insured, December 31, 2007.

Upon consideration of Plaintiff's medical impairments and complaints, the ALJ then determined that Plaintiff had the RFC to perform the full range of medium work as defined by 20 C.F.R. § 404.1567(c)[4] subject to the following limitations: "she would have required work which was simple, unskilled work activity which only required 1, 2, or 3-step instructions; work that was not in close proximity to co-workers (meaning that the individual could not function as a member of a team); and, work that was not in direct contact with the public; she could have lifted/carried 25 pounds frequently, and up to 50 pounds occasionally (from very little, up to 1/3 of an 8-hour workday); she could have stood and/or walked (with normal breaks) for a total of 6 hours in an 8-hour workday; she could have sat (with normal breaks) for a total of 6 hours in an 8-hour workday; she could have performed pushing and pulling motions with her upper and lower extremities within the aforementioned weight restrictions; she could have performed activities requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling; and she could have performed each of the following postural activities without restriction: climbing (ramps / stairs), balancing, stooping, kneeling, crouching, or crawling." (Finding 5; Tr. 25–26).

As for Plaintiff's symptoms, the ALJ undertook the prescribed two-step process 1) considering whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and 2) the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. (Tr. 26). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 27). Nonetheless, the ALJ determined that Plaintiff's statements

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

4

concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they are inconsistent with the RFC. (Tr. 27).

At step four, the ALJ found that Plaintiff could no longer perform her past relevant work as an x-ray technician. (Finding 6; Tr. 30).

However, at the fifth step, the ALJ concluded that based on testimony of a vocational expert (VE) and considering Plaintiff's RFC, age, education and work experience she could perform other work and find employment in representative occupations such as: hand packer (medium / unskilled), laundry worker (light / unskilled), laundry folder (light / unskilled), bench hand (sedentary / unskilled), and check weigher (sedentary / unskilled). (Finding 10; Tr. 31−32).

IV.  **Discussion**

A. **ALJ's Failure To Expressly Discuss Abnormal Cardiopulmonary Exercise Test Results In Connection With Chronic Fatigue Syndrome**

On July 5, 2007, Plaintiff Rogers underwent a Cardiopulmonary Exercise Test (exercise stress test) at Hunter-Hopkins Center, P.A., a center specializing in CFS consultation, testing, and treatment, with Board certified internist, Dr. Lapp. (Tr. 700−04). The exercise stress test was ordered by Dr. Laura A. Black, who also works at Hunter-Hopkins and first began treating Plaintiff in June 2007. (Tr. 571−73). According to Dr. Lapp, Plaintiff's exercise stress test was abnormal and revealed:

> "Most cardiopulmonary values fell outside of the predicted range, suggesting a significant impairment of work capacity that cannot be explained by deconditioning alone. The low maximal oxygen consumption of 14.6 ml/min/kg (or 4.17 METS) correlates with a severe impairment in work ability, or a 80% whole person impairment, according to the AMA Guidelines for Impairment Rating (3rd Edition)."

(Tr. 700).[5] Dr. Lapp noted that Plaintiff's anaerobic threshold occurred at between 5 and 5.5 minutes at a heart rate of 122 beats a minute. (Tr. 700). Plaintiff's effort during the test was described as "good." (Tr. 700). According to Dr. Lapp, Plaintiff Rogers "is advised not to exert more than 5 and one half minutes without taking a rest, or exceed a heart rate of 122 during exertion." (Tr. 700). On October 4, 2007, Dr. Black subsequently adopted Dr. Lapp's restriction that Plaintiff not exert herself beyond "a heart rate of about 135 for more than 3 – 5 minutes." (Tr. 569−70, 707). <u>This physical or exertional limitation is never expressly mentioned or addressed by the ALJ</u>.

The Social Security Administration, which recognizes that Chronic Fatigue Syndrome ("CFS") may be a disabling impairment, promulgated a ruling aimed at clarifying the policies of the SSA in developing and evaluating claims for disability on the basis of CFS. *See* SSR 99-2P, 1999 WL 271569. First, the SSA defines CFS as "a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity . . . characterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities." SSR 99-2p. Next, the SSA distinguishes its definition and treatment of CFS from the current case criteria of the Centers for Disease Control and Prevention ("CDC") by explaining that disability "may not be established on the basis of an individual's statement of symptoms alone."[6] Id. Instead, a finding of

---

[5] There is argument by the Commissioner that the edition of the AMA Guidelines cited by Dr. Lapp is out-of-date. The Commissioner implies that the 80% whole person impairment finding is not supported by more recent versions of the AMA Guidelines. The ALJ does not mention the AMA Guidelines or Dr. Lapp's reference to the same but Dr. Lapp's notes and the Third Edition of the AMA Guidelines is cited without qualification by two of the state agency physician consultants.

[6] The CDC, which accepts the individual claimant's self-reported symptoms, requires the concurrence of at least four of the following: self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities; sore throat; tender cervical or axillary lymph nodes; muscle

disability must be supported by "medical evidence, consisting of medical signs, symptoms and laboratory findings." Id. Of particular import here is the fact that SSR 99-2p speaks to the difficulty in evaluating disability claims brought by claimants with CFS. SSR 99-2p observes that, with cases of CFS, "conflicting evidence in the medical record is not unusual" given "the complicated diagnosis process." Id. Consequently, "[c]larification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources."[7] Id.

Here, the Administrative Law Judge failed to discuss or even acknowledge Plaintiff Rogers's abnormal exercise stress test, or the fact that Dr. Black, a treating physician and CFS specialist, adopted the exertional limitation recommended by Dr. Lapp. According to Plaintiff, the ALJ's failure to recognize the laboratory finding as *objective medical evidence* supportive of claimant's CFS diagnosis as a medically determinable impairment constitutes legal error and "means *de facto*[sic][*ipso facto*] that [the ALJ's] decision is not based on substantial evidence." (Doc. 28, 4). Plaintiff further contends that this error led the ALJ to discount or discredit Plaintiff's subjective complaints and the extent of Plaintiff's functional limitations and impairments.[8] In other words, the ALJ's "fundamental misunderstanding" of Plaintiff's

---

pain; multi-joint paint without joint swelling or redness; headaches of a new type, pattern, or severity; unrefreshing sleep; and postexertional malaise lasting more than 24 hours. SSR 99-2p. Other manifestations of CFS may include "muscle weakness, swollen underarm (axillary) glands, sleep disturbances, visual difficulties (trouble focusing or severe photosensitivity), orthostatic intolerance (e.g., lightheadedness or increased fatigue with prolonged standing), other neurocognitive problems (e.g., difficulty comprehending and processing information), fainting, dizziness, and mental problems (e.g., depression, irritability, anxiety)." SSR 99-2p.

[7] The ALJ stated, "Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor." (Tr. 29).

[8] Plaintiff objects to the M & R's determination that the ALJ relied on substantial evidence in finding Plaintiff only partially credible. (Doc. 28, 5 n. 1). However, because Plaintiff states her objection

condition led him to incorrectly assess the medical evidence, Plaintiff's credibility, and her RFC.[9]

On the other hand, the Commissioner contends that "[t]o the extent that the ALJ may have erred by failing to expressly discuss Dr. Lapp's exercise stress test report, Plaintiff has failed to carry her burden to show how she was harmed by that error." (Doc. 26, 10). The Commissioner further represents that Dr. Sankar Kumar ("Dr. Kumar"), one of the State agency physician consultants relied upon by the ALJ in fashioning the RFC in this case, in fact, analyzed the exercise stress test results and Dr. Lapp's findings / limitations such that there is no need for remand. (Id.) (Tr. 647). The Court rejects both of the Commissioner's arguments.

The ALJ − not the State agency physician consultant − is tasked with the job of identifying and weighing the probative evidence in the record such that a meaningful substantial evidence review may be had. *See Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) (holding that remand was proper remedy where ALJ "provided no basis for his conclusion" except to refer to state agency consultant's conclusions). In *Radford*, the Fourth Circuit explained the importance of the ALJ articulating his rationale:

> "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

---

by referring back to the argument already set forth at summary judgment, and does not point to any aspect of the M & R that is erroneous beyond the arguments previously set forth, the undersigned does not consider this a "specific objection" subject to *de novo* review.

[9] The ALJ pointed to inconsistencies in the record and found that those inconsistencies "cast doubt on the claimant's credibility." (Tr. 29).

*Radford*, 734 F.3d at 295 (internal citations and quotation marks omitted).[10]  Absent an adequate explanation of the ALJ's reasoning, the Court cannot undertake a "meaningful review."  *Id*., 296.  Because the ALJ in *Radford* simply summarily pointed to the state medical examiners' conclusions (as opposed to applying the requirements of the listing to the medical record), the Fourth Circuit found that the ALJ decision was "devoid of reasoning." *Radford*, 734 F.3d at 292, 294.  In other words, notwithstanding that the ALJ's "exclusive citation to [certain] opinions indicates the (apparently very high) evidentiary weight he placed on them, it does not indicate *why* the opinions merit that weight."  *Radford*, 734 F.3d at 295 (emphasis in original).  The panel made clear that referring to, or relying on, a state medical opinion in support of a conclusion as to disability does not constitute "substantial evidence."  *Id*.

With respect to Plaintiff's *exertional RFC*, the ALJ did nothing more than state that he agreed with the RFC opinions of two physicians, including Dr. Kumar.  (Tr. 29−30) ("The undersigned agrees with the determinations by Dr. Tomlinson and Dr. Kumar.")  <u>The ALJ does not explain *why* he agrees with Dr. Kumar</u>.  (Tr. 30).  The ALJ's conclusory finding as to Plaintiff's exertional RFC falls short of *Radford*.

The Court also disagrees that the ALJ's error was harmless.  SSR 99-2p identifies the Cardiopulmonary Exercise Test as a laboratory finding acceptable to establish a medically determinable impairment.  SSR 99-2p.  Pursuant to 99-2p, a medically determinable impairment is only found where this category of laboratory findings is "consistent with medically accepted clinical practice ***and are consistent with the other evidence in the case record***."  Id. (identifying three types of laboratory findings that require a finding of disability as well as "[a]ny other laboratory findings that are consistent with medically accepted clinical practice and are

---

[10] The *Radford* opinion was published on October 29, 2013.  The mandate issued on December 23 2013.  The M & R issued on November 25, 2013 – *before* the mandate issued.

9

consistent with the other evidence in the case record; *for example, an abnormal exercise stress test* . . . .") (emphases added). Indeed, Dr. Lapp's exercise stress test distinguishes Plaintiff's CFS diagnosis from a case where the diagnosis is made based *solely* upon the claimant's subjective complaints and symptoms, and likewise sets Plaintiff's case apart from the CDC definition of CFS as contemplated by the SSA.[11] Id. However, the ALJ's decision never expressly identified CFS as one of Plaintiff's medically determinable impairments. Instead, the ALJ described Plaintiff's CFS as "*subjective* complaints of chronic fatigue syndrome."[12] (Doc. 28, 5) (Finding 3, Tr. 23) (emphasis added). Similarly, because the ALJ did not address the exertional limitation imposed by Dr. Lapp and Dr. Black, the ALJ did not evaluate whether the exercise stress test results were consistent with the other record evidence. According to Plaintiff, the abnormal test results from the exercise stress test are, in fact, consistent with years of Plaintiff's subjective complaints as well as treatment notes dating back to 2002 documenting Plaintiff's symptoms. There are regular and consistent notations within the record documenting Plaintiff's extended periods of fatigue, post-exertional malaise, arthralgia (joint pain), myalgia (muscle pain), sleep disturbance, difficulty with balance, dizziness, "mild psychomotor agitation," and problems with short-term memory and concentration that tend to corroborate Plaintiff's CFS impairment and related functional limitations. (Tr. 571−73). During the

---

[11] The Commissioner concedes that Plaintiff satisfies the CDC criteria for CFS diagnosis.

[12] The ALJ qualifies his discussion of CFS throughout the decision as claimant's "alleged *subjective* complaints of chronic fatigue syndrome." (Tr. 27) (emphasis added). The ALJ's description of Plaintiff's "subjective complaints of CFS" in the list of severe impairments tends to show that the ALJ questioned the CFS diagnosis, which in turn, would have caused the ALJ to question any functional limitations associated with the CFS diagnosis. The Court can only speculate since the ALJ failed to provide an explanation.

evidentiary hearing held on September 10, 2009, Plaintiff testified about the deterioration of her condition between 2001 and 2007.[13] (Tr. 761−63).

As a whole, the ALJ's physical or exertional RFC analysis raises several questions. Plaintiff contends that the ALJ failed to properly evaluate the presented medical opinions, and particularly those opinions which would require a less restrictive RFC classification.[14] The M & R recognized that the ALJ's representation that both Dr. Tomlinson and Dr. Kumar found that Plaintiff was functionally capable of performing the full range of medium work is <u>incorrect</u>. (Tr. 29−30). Dr. Kumar, who reviewed and noted the results of the exercise stress test conducted by Dr. Lapp, actually opined that a light work RFC was preferred for Plaintiff Rogers given the "well documented tests confirming severe fatigue, not attributable to deconditioning alone."[15] (Tr. 647). In defense of Plaintiff's RFC, the Commissioner relies on the ALJ's reference and

---

[13] According to Plaintiff, her "muscles [were] very weak," she "used to walk the dog and [she] was no longer able to do that," she "required much more sleep," she "ache[s] like [she] has the flu," and has "a hard time formulating thoughts." (Tr. 761−63). Plaintiff described her pain as focused in the hips, thighs, and upper arms; often feeling "like the bones hurt." (Tr. 762, 763−65). Plaintiff also expressed frustration that she felt like she had lost some of her intelligence or cognitive functioning and "was just not sharp" and unable to do things she used to enjoy. (Tr. 762). Plaintiff described "a bad lack of concentration" that interferes with reading as well as ongoing bouts of depression. (Tr. 766−69).

[14] According to 20 C.F.R. § 404.1527(c), *all* medical opinions must be evaluated and given weight in accordance with the factors enumerated by the regulation, unless the opinion of a treating medical source is given controlling weight. Generally, more weight is given to an opinion by an examining or treating medical source. 20 C.F.R. § 404.1527(c)(1)(2). Additionally, more weight is accorded to an opinion to the extent that it is supported by relevant evidence and a good explanation, as well as consistent with "the record as a whole." 20 C.F.R. § 404.1527(c)(3)(4). Another factor identified within the regulation is the extent to which a source is deemed a specialist in a given area. *See* 20 C.F.R. § 404.1527(c)(5).

[15] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

agreement with, the findings of Dr. Kumar, a non-examining consultant physician. *See e.g.*, 20 C.F.R. § 404.1527(c)(1) (examining relationship as a factor in deciding weight of medical opinion evidence). There is nothing in the ALJ's decision addressing the fact that both Dr. Black and Dr. Lapp are nationally recognized specialists in the area of CFS. (Tr. 708) (Dr. Lapp is "widely recognized as an authority" on CFS). In its effort to minimize the ALJ's omission, the Commissioner attempted to discredit Dr. Black (and bolster the ALJ's decision) for Dr. Black's alleged failure to base her CFS diagnosis on any of the acceptable diagnostic criteria provided by SSR 99-2p, or any other objective medical evidence or tests. The exercise stress test is an objective medical test recognized by SSR 99-2p.

The ALJ also did not sufficiently reconcile or explain why he rejected the RFC findings of Dr. N.B. Shah, M.D. ("Dr. Shah"), the third state agency consultant to weigh in on Plaintiff's RFC (and the other state agency consultant to mention Dr. Lapp's interpretation of the exercise stress test results). The Commissioner − not the ALJ – argues that the postural limitations set out by Dr. Shah are not supported by the evidence. Dr. Shah, like Dr. Kumar, found that Plaintiff retained the RFC to perform light work subject to limitations. (Tr. 660). Dr. Shah's RFC included postural limitations that Plaintiff never be required to climb a ladder, rope, or scaffolds and occasionally be required to balance. (Tr. 655). Dr. Shah also opined that Plaintiff should "avoid even moderate exposure" to hazards such as machinery or heights. (Tr. 657). Dr. Shah observed that Dr. Black had recorded Plaintiff's "slight difficulty" related to balance. (Tr. 660). Although the ALJ referenced the finding in his decision in discussing Dr. Black's findings, <u>the ALJ did not mention this suggested functional limitation in the portion of his written decision dealing with RFC</u>. (Tr. 28).

Finally, according to the VE, the "light work" only restriction, combined with Plaintiff's existing non-exertional functional limitations, would severely restrict the pool of jobs.[16] (Tr. 782−83). Significantly, the VE testified that if a claimant with the RFC described by the ALJ was further restricted to light work and no exposure to machinery (in addition to the other limitations contained within the RFC), those limitations would alter the disability analysis such that the claimant would be precluded from the performance of all work activity. (Tr. 782−83). The judge below calculated, without the benefit of *Radford*, that this issue [analysis of Plaintiff's physical exertional RFC and treatment of the state agency consultants' RFC findings – Dr. Shah's opinion that claimant was also limited to exposure to machinery] was "a close call." (M & R, 14). This Court is not persuaded that the ALJ adequately recognized and addressed Plaintiff's CFS and RFC.

**B. Post-Hoc Rationale**

Also relating to the adequacy of the ALJ's treatment of CFS, and particularly the abnormal exercise stress test findings, Plaintiff asserts that the M & R also erred by accepting the Commissioner's post-hoc rationale of the ALJ's decision.[17] Plaintiff directs the Court to *SEC v. Chenery*, which holds that the "grounds upon which an administrative decision must be judged are those upon which the record discloses that its action was based." 318 U.S. 80, 87 (1943). Therefore, in the context of a Social Security appeal, the Commissioner's defense of its final

---

[16] The no exposure to machinery limitation apparently rules out any of the laundry worker jobs cited by the VE. (Tr. 782−83). In earlier filings, the Commissioner conceded that the hand packer job is also eliminated as a full range of medium work job since it is inconsistent with the other record evidence and the other RFC determinations the ALJ found controlling.

[17] One reason behind the prohibition on post-hoc analysis, is that if the Court is permitted to rely on matters beyond that discussed and relied upon by the ALJ, the claimant is not provided an opportunity to respond to the post-hoc rationale during the administrative process. (Doc. 28, 8).

ruling is limited to the reasons contained within the ALJ's decision. *Id.*; *see also Patterson v. Bowen*, 839 F.2d 221, 225 (4th Cir. 1988).

In light of the Court's analysis as to the first specific objection, the ALJ's failure to discuss Dr. Lapp's findings after administering the exercise stress test, the Court finds this second specific objection <u>moot</u>.

## V.     Order

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment be **GRANTED**; that Defendant's Motion for Summary Judgment be **DENIED**; and that the Commissioner's denial of benefits be **VACATED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Signed: February 6, 2015

Richard L. Voorhees
United States District Judge